TATE, Justice
(dissenting).
The writer respectfully dissents.
The accused was convicted of aggravated rape. Undoubtedly, the assailant of the fine lady so victimized should be punished. The accused is a bad man, at least presumptively a child molester and a burglar.
Why, then, should the dissenting justices demur from affirmance of the conviction, no matter how strained the grounds ? Perhaps a brief summary of the grossly unfair prosecution evidence may indicate that the conviction must be reversed to assure a fair trial and a fair opportunity for a jury to determine whether this accused is guilty of the crime charged. The bulk of the evidence at the present trial is irrelevant to such determination.
The accused is charged with raping Janice Wallace at 3 a. m. on December 3, 1966. She testified as to the rape. In court, she identified the accused as her assailant.
This seems a simple enough case for the jury’s determination. Either the jury believes Mrs. Wallace’s identification (for there is no other evidence connecting the defendant with the scene or the date or the crime), or it does not. What more is there to the case?
This is the serious question: What more is there to the case ? Why did not the prosecution simply put on this evidence and rest (or else secure further evidence more firmly connecting the defendant with the scene or the crime), instead of putting on the grossly prejudicial and irrelevant evidence I shall refer to shortly?
The reason why the prosecution did not put on a better case as to the Wallace rape of December 3 is, the record seems to indicate, because it could not.
The key to the prosecution’s misuse of evidence of other offenses lies in the lack of really connective evidence. It is also probably indicated by the observation of the detective to whom the victim complained within an hour of the rape: “ * * she gave us what you might consider a *457 vague description because of poor lighting inside the place.”[1] Tr. 277.
Supposedly to prove that the defendant raped Mrs. Wallace, the only further evidence put on by the prosecution concerned two dissimilar and non-related offenses:
(1) Two weeks after the Wallace rape (on December 19th) a man awakened a seven-year old girl who lived three blocks away from Mrs. Wallace. The little girl was sleeping in her bed with her two brothers. The man offered her money and told her he would kill her if she screamed. He took off her bottom clothes. The little girl replied, “No, sir”, to both questions, “He didn’t touch you with his hands ?” and “Did he touch you?” Tr. 292. Seminal stains were found on the sheet muddied by the assailant’s presence. The accused is at least connected with this repulsive crime, because his wallet and driver’s license were found under the little girl’s bed,[2] although the crime is obviously dissimilar in nature and method to the Wallace rape.
(2) Two weeks before the Wallace rape (on November 19th), a college girl was awakened by someone pulling her bedclothes off. This Negro man was fully clothed. He offered her five dollars and told her he would hurt her if she screamed. The girl said she was going to scream whether he hurt her or not. The man asked her not to scream and left. The girl admitted she could not identify her assailant, and no effort zvas made to tie in this assailant zvith the defendant, sitting just a fezv feet azvay as the girl testified.
This totally irrelevant incident, dissimilar also in method to the offense charged,[3] was apparently introduced in evidence because of the circumstance that a pea-coat, stolen in a second burglary of the college-girl’s residence almost a month later than her attempted rape, was found in the defendant’s room when it was searched after his address was found under the little girl’s bed on December 19th. The finding of the pea-coat may, if unexplained, connect the defendant to this second burglary; it has no probative value in connecting the accused to the attempted rape of the college-girl a month earlier, and no connection whatsoever with the Wallace rape two weeks earlier.
The unauthorized search and seizure of the defendant’s room after the incident *459 o'f December 19th deserves a word of comment. The detective, who had seized the pea-coat (which tended to identify the defendant as connected with or having received goods stolen in a burglary completely unrelated to the rape charged), testified that he had done so by virtue of a search-warrant obtained from some unknown district judge. The search-warrant was never produced.
It was not proved that the detective actually obtained a search-warrant. The partner with whom he worked the case was not even called to corroborate his testimony that one had been obtained, and the police records division officer testified there was “no record” of any search-warrant, Tr. 354. Yet the detective was permitted to testify concerning the seizure on his own blithe testimony that the return must have been lost because he had returned it to the unknown judge, just seven months before the trial of June, 1967.
The presentation of the prosecution’s case, I must regretfully say, represents an effort to obtain a conviction at any cost, no matter how irrelevant or inadmissible the grossly prejudicial evidence introduced. Essentially, after the weak identification of the accused by the victim, the prosecution sought to prove not that he was the perpetrator of the rape but that he was a bad, bad man.
I do not doubt he may be. In America, however, evolving through the thousand years of prior legal history upon which our concept of justice is based, our principle is that we send a person to the penitentiary because of proof that he has committed the crime with which charged, not simply because he is an obnoxious or even evil individual.
The majority more or less admits that the stolen pea-coat was improperly admitted into evidence, being the product of an illegal warrantless search. It characterizes such admission as harmless error.
The error cannot be harmless. In the first place, as noted, the proof of guilt of the crime for which convicted is equivocal, not overwhelming. Further, in Chapman v. California, 318 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), the very case relied upon by the majority, the Supreme Court stated that, “before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt”. 318 U.S. 24, 87 S.Ct. 828. To do so, the appellate court must determine that the error made no contxdbution to conviction. 318 U.S. 26, 87 S.Ct. 824.
Under the majority’s rationale, this cannot be done. The majority apparently believes that the pea-coat, stolen in a burglax-y on a later occasion, somehow con *461 nects the defendant with an attempted rape four weeks earlier by an unidentified man of a college-girl living at the same residence as that from which the pea-coat was stolen, which the majority feels somehow is relevant to prove that the defendant committed the present rape two weeks later some six to eight blocks distant. If the college-girl rape is indeed relevant, and if the pea-coat is indeed relevant, then its introduction is highly prejudicial as inferentially proving (!), so the majority finds, that the defendant committed both rapes.
The present dissent has just attempted to demonstrate on a common-sense factual basis that the present conviction results from the admission of improper evidence and in proceedings fraught with unfairness. I concur in my brother BARHAM’s scholarly dissent setting forth the legal reasons of error.
In summary, grossly prejudicial and irrelevant evidence of other crimes (with one of which the accused is not even shown to be connected) was introduced. Evidence illegally seized without search-warrant- — ■ evidence indicating the defendant’s connection with a burglary at another time and place — was admitted. The trial was fundamentally unfair.
The conviction should be reversed, and the case remanded for the accused’s pretrial on the offense with which charged and in accordance with normal American standards of justice and due process.
I therefore respectfully dissent.

. The victim awoke in her bedroom to find the assailant in her bed. The only lighting was provided by the dim flicker through the grates of a floor gas-lieater beyond the foot of the bed.

. This apparently precipitated his arrest and being charged with other unsolved sexual crimes in the area.

.E. g.: the assailant was clothed, while in the Wallace incident the assailant had taken off his clothes before he awakened the victim ; the college-girl’s assailant of-. fered money, while the Wallace one did not. .....